Filed: 4/30/2019 3:58 PM
Lynne Finley
District Clerk
Collin County, Texas
By Migdalia Martinez Deputy
Envelope ID: 33191485

**401-02353-2019**
CAUSE NO. 2019-_____

| | | |
|---|---|---|
| THOMAS BURKE | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | COLLIN COUNTY, TEXAS |
| | § | |
| BLUE CROSS BLUE SHIELD | § | |
| OF TEXAS | § | _____ JUDICIAL DISTRICT |

## ORIGINAL PETITION

This is a suit for damages and other relief by Plaintiff Thomas Burke on behalf of his son, Charles Burke, against Blue Cross Blue Shield of Texas. It is an action for breach of the insurance contract, violations of the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, and damages.

### Parties

1. Plaintiff Thomas Burke is a resident citizen of McKinney, Collin County, Texas. His son, Charles, was a minor at the time of the events described in this pleading. Charles is now 20 years old and has executed a Durable Power of Attorney appointing his father as his agent.

2. Defendant Blue Cross Blue Shield of Texas ("BCBS") is a domestic or foreign corporation licensed to do business and doing business in the State of Texas. BCBS is a division of Health Care Service Corporation, a mutual legal reserve company. All communications between Plaintiff and BCBS and actions taken by BCBS, as alleged herein, were approved or ratified by Health Care Service Corporation. BCBS may be served through its registered agent, Corporation Service Company, 211 East 7th St., Suite 620, Austin, TX 78701-3218, or wherever it may be found.

### Jurisdiction

3. This Court has jurisdiction because the amount in controversy exceeds the jurisdictional minimum. Further, it has jurisdiction under Texas Civil Practice and Remedies Code §17.041 and §17.042 because at the time of the occurrence in question, BCBS did business in the State of Texas and committed to performing a contract in whole or in part in the State of Texas.

**Venue**

4. Venue is proper in Collin County, Texas since all or a substantial part of the events giving rise to the claim occurred in Collin County.

**Claims for Relief**

5. Pursuant to Tex. R. Civ. Proc. 47, Plaintiff seeks monetary relief of over $200,000 but not more than $1,000,000.

**Facts**

6. BCBS is in the insurance business and sells various forms of life insurance, disability insurance, and health insurance. The promise of health insurance is to cover medically necessary expenses if the insured becomes ill and needs medical attention.

7. Implicit in the promise of the BCBS policy is that it will timely, fairly, and objectively adjust and pay a covered claim. If in doubt about the cause or nature of the insured's disability, BCBS implicitly promises to fairly and objectively investigate the claim and promptly pay if the claim meets the policy requirements.

8. As a minor, Charles Burke struggled with a severe emotional disturbance, major depression, obsessive/compulsive traits, and attention problems. He had a history of not attending school due to social phobia and performance anxiety. While living

with his family, he had conflicts with his brother, including instances of severe physical aggression. He attempted different outpatient treatment programs, along with therapeutic schools, with limited results.

9. In February 2015, Charles was admitted to Rogers Memorial Hospital for the treatment of severe mental illness. He was released in May 2015. Rogers Memorial Hospital advised that Charles needed continued, long-term residential treatment to improve upon and assimilate his progress.

10. On May 18, 2015, Charles was admitted for residential mental health treatment at Waypoint Academy ("Waypoint") in Huntsville, Utah. Waypoint is licensed for residential treatment by the Utah Department for Human Services and accredited by The Joint Commission. Charles' treatment included family therapy, individual and group therapy, exposure therapy, and prescriptions of multiple psychotropic drugs. He was discharged from Waypoint on August 11, 2016 and was able to return home.

11. At all times relevant in this matter, Charles was a covered beneficiary under a fully-insured BCBS policy with out-of-network benefits that was issued to him individually in 2015 and to his father as a participant of an employee benefit program in 2016.

12. As a condition of coverage, each BCBS policy required services to be "medically necessary," defined by both to be "consistent with generally accepted standards of medical practice."

13. In June 2015 and in a series of appeals in 2016, BCBS denied coverage for the entirety of Charles' treatment at Waypoint as "not medically necessary". In denying

3

the claim, BCBS asserted that Charles did not satisfy criteria articulated by the MCG Health (18th edition) Residential Acute Behavioral Health Level of Care Guideline ("MCG Guideline"). It repeatedly cited to a lack of "imminent danger to self or others" and lack of "life threatening impairment in functioning" as reasons for its denial.

14. The MCG Guideline, which is developed by MCG Health, a for-profit publisher, is fatally defective and inconsistent with generally accepted standards of medical practice. MCG Health's guideline development process is not transparent, and its guidelines are inaccessible to the general public. MCG Health and its insurer customers rely on this secretive process, in which financial conflicts of interests shape the criteria enumerated in the MCG Guideline. Because the MCG Guideline is developed as a cost-management tool for the insurance industry, it is not warranted to conform to the terms of any specific insurance policy or to state and/or federal laws.

15. BCBS knows that the MCG Guideline is defective. The criteria enumerated therein are applicable to involuntary psychiatric hospitalization – not to voluntary, sub-acute residential mental health treatment. Additionally, in 2017, the editor of the MCG Guideline authored a white paper, "Mental Health Parity: Where We Have Come From? Where Are We Now," that highlighted MCG Health's fundamental misconception of the purpose of intermediate levels of behavioral health care, which include residential treatment. The MCG Health white paper, which was not distributed by BCBS to any of its insureds, improperly contends that, rather than improve functional status in people with impairments that are not acute

4

intermediate behavioral health services are merely intended to avert hospitalization or stabilize acute crises. This premise was flatly rejected by a federal court in a nationwide class action challenging the medical necessity criteria of a BCBS competitor. *Wit v. United Behavioral Health*, No. 14-CV-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019).

16. The use of the defective MCG Guideline has also led to a class-wide recovery for ERISA participants and beneficiaries. *Doe et al v. Health Care Service Corporation*, C.A. 1:16-cv-04571 (N.D. Ill. 2018). Because BCBS failed to identify Charles as a class member entitled to relief in *Doe*, he did not receive notice or compensation in that matter.

17. Although BCBS self-servingly recommended partial hospitalization, an outpatient, less expensive level of care, as a treatment alternative for Charles, BCBS failed to reimburse him at the partial hospitalization rate. This was particularly inequitable since residential treatment subsumes the clinical components of partial hospitalization and since BCBS recommended partial hospitalization for Charles well into 2016, when it fully adjudicated the administrative appeals under both policies. Instead, BCBS helped itself to a windfall.

18. The Burkes promptly appealed BCBS's denial of coverage. BCBS denied that appeal on January 15, 2016 and again in December of 2016.

19. Following a complaint by the Burkes to the Texas Department of Insurance ("TDI"), on June 14, 2018, BCBS confirmed that "because Charles' inpatient admission was deemed not medically necessary, all subsequent services of the continuous stay are also deemed not medically necessary" and that Charles

5

exhausted his appeal rights for inpatient services as a result of the May 18, 2015, inpatient admission.

20. On February 15, 2019, Plaintiff sent a demand letter to Health Care Service Corporation. The parties agreed to toll the statute of limitations on any bad faith causes of action to April 30, 2019.

21. Having exhausted their administrative remedies, Plaintiff brings this action to recover the health insurance benefits promised in the policy.

**Breach of the Insurance Contract**

22. Plaintiff incorporates the preceding factual allegations.

23. At all material times, the policy was in full force and effect. All of the premium payments were timely paid by Plaintiff. Plaintiff provided BCBS with the information and evidence needed to cover Charles's treatment at Waypoint. However, BCBS breached its duty under the insurance policy by failing and refusing to pay for that covered treatment. Plaintiff was forced to pay for the treatment entirely out of pocket. The 2015 claims total $125,172. The 2016 claims total $105,957. After applicable copays, Plaintiff is owed at least $219,129 in reimbursement for Charles's medical necessary treatment at Waypoint, for which he now sues.

**Breach of Duty of Good Faith and Fair Dealing**

24. Plaintiff incorporates the preceding factual allegations.

25. Insurers have an affirmative common law duty of good faith and fair dealing. That means that in the handling and adjustment of a claim, the insurer is obligated to act in good faith and deal fairly with the policyholder in delivering on the promise

6

of the policy. BCBS was obligated to meet this common law obligation once a claim on the policy was made.

26. The guiding principles of proper claims handling help to insure the insurer meets this obligation. Claims handling personnel must be adequately trained on these principles. These principles include an obligation to promptly acknowledge the claim, timely investigate the claim, and adjust that claim in a fair, objective, and non-biased manner.

27. Timely adjustment and investigation means seeking information and evidence to answer questions raised that may clarify the insurer's obligation to pay or deny the claim. Traditional claims handling principles also include a responsibility to find coverage, err in favor of the insured, resolve ambiguities and doubt in favor of the insured, and pay the claim if it meets the policy requirements for payment.

28. An objective and thorough investigation includes inquiry into reasons to pay a claim, along with any reasons to deny the claim. The insurer must look at the positive and negative before making its claim decision. Claims decisions must be based on facts, not guesses or speculation. Artificial obstacles to payment, unreasonable interpretation of policy terms, speculation, outcome-oriented investigations, and bias should pay no role in delivery on its promise. In following these principles, the insurer is positioned to deliver on the promise of the policy. It is also positioned to meet its obligation of good faith and fair dealing.

29. BCBS and its claims personnel failed to follow these claims handling principles. Its adjusters, on information and belief, lacked the requisite training to properly investigate and adjust this claim. They further failed adjust this claim in a fair and

7

equitable manner. They ignored their responsibility to find coverage or err or resolve doubts in favor of the insured and resolve ambiguities in favor of the insured. They failed to objectively and fairly investigate and evaluate this claim. They merely looked for a reason to deny, ignoring reasons to pay the claim. BCBS was fully aware of and endorsed this conduct. In addition, BCBS and its adjusters failed to acknowledge Charles's medically necessary care and instead denied this claim solely based on guesswork and speculation.

30. Throughout this claim, BCBS utterly failed to acknowledge in its communications with Plaintiff that the MCG Guideline it used in this claim was fatally defective. Instead, it presumably began and ended its investigation and adjustment of this claim with the MCG Guidelines and other similarly archaic and defective guidelines. In doing so, it sought to find support for its conclusion that Charles' treatment was not medically necessary. This was the sole focus of any investigation BCBS undertook. It was an outcome-oriented focus seeking to find a reason for denial.

31. From the moment BCBS received Plaintiff's appeal letter, it knew or should have known that its conclusion that Charles' treatment was not medically necessary was wrong. It failed to conduct any investigation at all to support the basis of its denial. Its liability was thus reasonably clear.

32. Proper claims handling conduct requires the insurer, among other things, to work with the insured to find coverage. In this case, BCBS worked only to find a reason to deny the claim. Coverage could have easily been found if BCBS fully and fairly reviewed the appeal. Doing so would have led to only one conclusion: that Charles'

EXHIBIT A - NOTICE OF REMOVAL

residential treatment at Waypoint was medically necessary. His treatment was covered by the policy. BCBS's liability as of the time of its denial was thus reasonably clear.

33. This conduct constitutes a breach of its common law duty of good faith and fair dealing. BCBS had a duty to fairly, objectively, and thoroughly investigate, evaluate, and adjust Plaintiff's claim. In this instance, its denial was made without any reasonable basis. At all material times, BCBS's liability was reasonably clear.

34. Charles' parents did what few parents have to do: admit that their son needed professional help to treat his mental illness. They bought the BCBS policy to give them peace of mind if any of them needed medical treatment. BCBS took away that peace of mind. The Burkes relied on BCBS to honestly, objectively and fairly investigate and adjust their claim in good faith. That reliance has been to their detriment. BCBS's breach of its common law duty of good faith and fair dealing instead caused the Burkes to suffer considerable emotional distress and mental anguish. This conduct further caused injury and damage to the Burkes, for which they further sue.

## Violations of the Texas Insurance Code

35. Plaintiff incorporates the preceding factual allegations.

36. The Texas Insurance Code prohibits, among other things, certain activity by an insurer in the handling and adjustment of claims for policy benefits. Its focus is on the insurers claims handling conduct. BCBS, in its handling and adjustment of Plaintiff's claim, has engaged in just such prohibited unfair insurance claims practices in violation of Chapters 541 and 542 of the Texas Insurance Code. These

9

unfair practices have also been committed knowingly. BCBS has committed, *inter alia*, the following unfair claims settlement practices:

i. Misrepresenting to Thomas and Charles Burke (the "Burkes") material facts or policy provisions relating to the coverage at issue;

ii. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Burke claim when its liability was reasonably clear;

iii. Failing to promptly provide to the Burkes a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for its denial of a claim or offer of a compromise settlement of a claim;

iv. Refusing to pay a claim without conducting a reasonable investigation of the claim;

v. Knowingly misrepresenting to the Burkes pertinent facts or policy provisions relating to coverage at issue;

vi. Failing to acknowledge with reasonable promptness pertinent communications relating to the claim arising under the policy;

vii. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, and failing to state those material facts necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and

viii. BCBS engaged in this conduct knowingly with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices.

37. These provisions of the Insurance Code are intended to protect insurance consumers from misleading or false statements about the policy or claim or compel the insurer to disclose material facts to avoid misleading the consumer. They are also intended to compel the insurer to promptly resolve claims when liability is reasonably clear. BCBS violated these provisions of the Insurance Code.

10

38. BCBS claimed in the denial letter that Charles' residential treatment was not medically necessary. It also claimed that Charles was not in "imminent danger to self or others" and lacked "life threatening impairment in functioning". These statements were misleading and were material to whether or not the claim was excluded from coverage. The statements were intended to mislead and did mislead the Burkes to a false conclusion about the BCBS policy coverage.

39. BCBS represented to the Burkes that residential treatment was a covered benefit. In reality, it systematically applied involuntary psychiatric hospitalization criteria to deny access to voluntary, sub-acute residential treatment.

40. BCBS also represented to the Burkes that it administered intermediate mental health benefits in parity. In reality, it applied acute care standards to residential treatment but did not extend those standards to intermediate health benefits.

41. Any claim by BCBS that it received no information to support the claim would be untrue. The Burkes provided BCBS all of the information available. Even if BCBS actually believed it had no information to support the Burke claim, as a part of its duty to investigate and perform a reasonable investigation, it was obligated to inform its policyholder what specific information it needed to perfect their claim. It failed to do so. Any investigation BCBS undertook cannot be reasonable or thorough without at least, under these circumstances, making an inquiry of the Burkes for any information they might have to support their claim.

42. At no time before this suit was filed did BCBS make any attempt, in good faith or otherwise, to settle the Burke claim. Though it received the February 15, 2019 settlement demand, which clearly and unequivocally stated the facts in support of

11

coverage of the Burke claim, BCBS chose to ignore the facts. It chose to ignore its use of fatally defective guidelines. Its liability was reasonably clear. Failing to make an effort to promptly, fairly, and equitably settle this claim was a further violation of the Insurance Code provisions.

43. At all material times, BCBS's conduct in this regard was intentional. It knowingly engaged in this conduct. It knew it had no factual basis upon which to deny this claim. Instead, it intentionally chose to ignore the factual and legal evidence provided by the Burkes. It chose not to substantively respond to the Burke's settlement demand, remain silent, take no action, perform no investigation, and hope that the Burkes would simply go away.

44. All of this conduct, along with BCBS's other acts and omissions, was in violation of Texas Insurance Code §§541.001, et seq., 542.001, et seq., including the Insurance Code's provision for the prompt payment of claims, §542.051, et seq.

## Unconscionable Conduct

45. Plaintiff incorporates the preceding factual allegations.

46. BCBS has also violated the Texas Deceptive Trade Practices - Consumer Protection Act, §§17.46, et. seq. by its misrepresentations and by engaging in, *inter alia*, unconscionable conduct and course of action. A glaring example was BCBS's intentional use of the fatally defective MCG Guideline. It was also unconscionable for BCBS to blindly rely on medical record reviewers lacking the appropriate education, training, or experience in relevant areas of medicine to the claim.

47. BCBS's conduct as demonstrated in this action is not isolated to this claim. On information and belief, this conduct is part of a common pattern and common

12

practice toward other policyholders like the Burkes with health policies who submit mental health claims. This non-disclosure and deception is unconscionable.

48. Thomas Burke bought the BCBS policy to give peace of mind if anyone in his family needed medical treatment. BCBS took away that peace of mind. The Burkes relied on BCBS to honestly, objectively, and fairly investigate and adjust their claim in good faith. That reliance has been to their detriment. BCBS's breach of its common law duty of good faith and fair dealing instead caused the Burkes to suffer considerable emotional distress and mental anguish. This conduct further caused injury and damage to Plaintiff, for which he further sues.

### Damages

49. The acts, omission, and practices of BCBS constituting a tort were the proximate cause of the damages sustained by Plaintiff. All of BCBS's acts and practices in violation of the various statutes herein recited were the producing cause of the actual damages suffered by Plaintiff, including, but not limited to, damages for mental anguish and emotional distress, as well as actual damages under the insurance contract. For all of these wrongful acts, omissions, and practices, Plaintiff is entitled to money damages as may be found by the jury.

50. The acts, omissions, and practices of BCBS constituting a tort herein warrant the imposition of 18% per annum pursuant to Tex. Ins. Code §542.060, *et seq*.

51. The actions of BCBS in the handling of Plaintiff's claim were done knowingly and intentionally or with a conscious or callous disregard for the rights and welfare of the Burkes. As such, its actions reflected gross negligence and were so outrageous

as to warrant the imposition of punitive or exemplary damages, for which Plaintiff further sues for recovery. Plaintiff seeks such punitive or exemplary damages as may be assessed by the jury in its discretion.

### Request for Attorneys' Fees

52. This suit was made necessary by the wrongful acts and practices of BCBS. Plaintiff has been forced to retain attorneys to prosecute his claims, for which he has agreed to pay a reasonable attorneys' fee. In this regard, he is entitled to recover his reasonable attorneys' fees and expenses incurred and to be incurred in this action for the full prosecution of this claim through trial and appeal, if any, that are reasonable and necessary for him to obtain the relief he seeks. Accordingly, Plaintiff further seeks recovery of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this action pursuant to pursuant to Section 38.001, *et. seq.* of the Texas Civil Practice and Remedies Code, Ch. 541 and 542 of the Texas Insurance Code, Section 17.49 *et seq.* of the Business and Commerce Code, and any all other applicable Texas law.

### General Claims

53. All notices required to be given have been given, and all conditions precedent have been satisfied.

54. Plaintiff requests prejudgment interest at the maximum rate permitted by law, including that permitted pursuant to Tex. Ins. Code §542.060 and §1103.104(c), or the maximum rate permitted in equity.

### Demand for Jury Trial

55. Plaintiff demands a jury trial.

14



### Request for Disclosure

56. Plaintiff requests that Defendant disclose, within 50 days of service of this request, the information and material described in Rule 194.2(a)-(l) of the Texas Rules of Civil Procedure. Copies of documents and other tangible items responsive to this request must be served on Plaintiff with Defendant's Response. Tex. R. Civ. P. 194.4.

### Prayer

For these reasons, Plaintiff requests Defendant be cited to appear and that on final trial Plaintiff obtains a judgment against Defendant in an amount in excess of the minimum jurisdictional limits of this Court, Plaintiff be awarded judgment against Defendant for the above described Damages in the full amounts allowed by law, together with statutory interest, costs and reasonable attorneys' fees incurred herein, pre-judgment and post-judgment interest at the maximum rate allowed by law, costs of court, equitable relief as above described, and all such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

By: _____
araval@bergplummer.com
2019.04.30 13:46:34 -05'00'

Amar Raval, TBA #24046682
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, Texas 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF



EXHIBIT A - NOTICE OF REMOVAL



STATE OF TEXAS )
COUNTY OF COLLIN )
I, Lynne Finley, District Clerk in and for Collin County Texas, do hereby certify that the above foregoing is a true and correct copy of the original document as the same appears on the file in the District Court, Collin County, Texas. Witness my hand and seal of said Court, this the 10 day of MAY A.D., 20 19.
LYNNE FINLEY, DISTRICT CLERK
COLLIN COUNTY, TEXAS
_____, DEPUTY

EXHIBIT A - NOTICE OF REMOVAL